[Cite as *State v. Hufnagel*, 2014-Ohio-1799.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 195 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| BRIAN HUFNAGEL | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the County Court
No. 2 of Mahoning County, Ohio
Case No. 11 CRB 1329

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:       Atty. Christopher A. Maruca
The Maruca Law Firm, LLC
201 E. Commerce Street
Suite 316
Youngstown, Ohio  44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  April 21, 2014

WAITE, J.

{¶1}   Appellant Brian Hufnagel is appealing his conviction and sentence for domestic violence.  He challenges the conviction on the grounds that the jury verdict is against the manifest weight of the evidence.  He relies almost exclusively on his own testimony at trial to try to persuade us to overturn the conviction, but the victim's testimony, the corroborating testimony of one of the arresting officers, and even some of Appellant's own testimony more than amply support the conviction.  Appellant also challenges the sentence because the victim, as part of her victim's impact statement at sentencing, spoke about prior instances of domestic violence and abuse, made a recommendation about the length of the sentence, and he believes was overly emotional in giving her statement.  Appellant failed to ask for a continuance to rebut the victim's statement and any argument relative to error about new evidence being introduced at sentencing was waived.  A victim is permitted to recommend a sentence under R.C. 2930.13(C)(4), and there was no error in asking for the maximum penalty to be imposed.  Appellant has not cited any relevant law that would create reversible error due to a victim giving an emotional statement at sentencing.  Appellant has raised a number of capital murder cases that have no bearing on the instant appeal with respect to a victim-impact statement.  Appellant's two assignments of error are overruled and the conviction and sentence are affirmed.

## Background

{¶2}   On October 2, 2011, Boardman Township Police responded to a domestic violence call at 5333 Old Oxford Lane, the home of Appellant and Tanya Hufnagel.  Appellant and Tanya were married at the time and lived with their 2-year

old daughter and Tanya's son from a previous relationship. Tanya had called 911 twice that evening to report that Appellant was hitting her. Two officers arrived, and one spoke to each of the parties. Tanya told Boardman Township Sergeant Brian Habeger that they had an argument about cooking dinner when Appellant picked her up by the neck and threw her into a couch while she was holding her child. She also said Appellant pushed a chair into her stomach, hit her in the chest with the palm of his hand, and repeatedly struck her. Tanya was upset, crying, and had redness on her neck as well as a bruised thigh. No photographs were taken of her injuries. She told Habeger that she wanted Appellant arrested because she was afraid that he might hurt her or her child.

{¶3} Boardman Township Officer Heather Douglas spoke with Appellant, who said that he and Tanya were arguing over cigarettes. He had scratches on his arm and photographs were taken. Douglas did not interview or speak to Tanya about the assault, and did not notice that she had any injuries. Douglas noted that Tanya seemed overly upset based on the information given to her by Appellant.

{¶4} Appellant was immediately arrested and charged in Mahoning County Court No. 2 with one count of first degree misdemeanor domestic violence, R.C. 2919.25(A). He had a jury trial on May 10, 2012. The victim testified at great length about the attack. She said they and the two children resided at 5333 Old Oxford Lane in Boardman, Ohio. On October 2, 2011, Tanya returned home at 4:00 p.m. from her son's football game. Appellant was sleeping on the couch. Tanya asked Appellant if he wanted anything to eat, and he said no, he wanted to continue

sleeping. When Tanya later sat down on the couch, Appellant yelled and cursed at her for not making him anything to eat. This verbal abuse lasted 45 minutes. The two-year old child was frightened and crying. When Tanya picked up the child, Appellant grabbed Tanya by the throat and squeezed her neck, lifting them both off the ground. He threw Tanya and the child against the couch. Appellant then hit Tanya in the head and chest a few times. When she leaned forward, he hit her in the back of the head. Appellant then went to the computer room as if nothing had happened. (5/10/12 Tr., pp. 23-25.)

{¶5}   Tanya called the police, but hung up because Appellant had threatened in the past to kill her if she called the police. (5/10/12 Tr., p. 27.) She asked to go to the store to buy milk for her daughter, but he refused, and said if she took the car he would report it as a stolen vehicle. She made dinner, but Appellant refused to eat it. She went into the computer room, and Appellant slammed a chair into her stomach, again cursed her and started hitting her head. (5/10/12 Tr., p. 29.) He continued hitting her throughout the house. Tanya called the police again and waited outside until they arrived.

{¶6}   Officers Habeger and Douglas also testified at trial. Habeger confirmed most of the testimony given by the victim. Habeger noted that Tanya told him that Appellant's violent behavior had gone on for years and that a prior domestic violence incident occurred when the Hufnagels lived in Girard. (5/10/12 Tr., p. 29.) He noted that the victim was very upset, crying, and had red marks on her neck and a bruise on her thigh. The officers determined that Appellant was the primary aggressor and

arrested him. Tanya was too afraid that Appellant might hurt her again if she filed a criminal complaint, so Habeger filed and signed the domestic violence complaint.

{¶7} Appellant testified that he told Tanya he wanted a divorce on Friday, September 30, 2011. He arrived home the next morning at 3:00 a.m., bringing with him his assistant in his wedding DJ business, Alana Bauer. Appellant stated he had to perform at a wedding on Saturday. After he woke up Saturday, he and Tanya had an argument about the request for divorce. Appellant and Alana left for their wedding job. After he returned, he and Tanya talked for a while about their marriage, and he then went to bed.

{¶8} On Sunday, October 2nd, he got up to go to work as an announcer for the Boardman Little Spartans football game, but the game was cancelled because of rain so he left. Tanya was out picking up her son from the game when Appellant returned home. Appellant fell asleep on the couch. Tanya arrived home and asked him if he wanted anything to eat. He said no and went back to sleep. He woke up at 5:00 p.m. and asked her if she was going to make dinner. She said no, because she made dinner at 4:00 p.m. and he did not want it then. They had an argument about this, but Appellant insisted that he was not verbally abusive during the argument. He went out to get cigarettes, and went into the computer room. They had an argument over cigarettes in the computer room, and Appellant stated that Tanya scratched his arms.

{¶9} Appellant denied causing the large bruise on Tanya's thigh. He said Tanya had tripped and "hit her leg off the wall and I was not home." (5/10/12 Tr., 91.)

He did admit that he "bumped into her," causing Tanya to fall onto the couch. (5/10/12 Tr., p. 97.) He denied choking her or hitting her with his chair.

{¶10} Alana Bauer testified that she was at the Hufnagel residence on October 1, 2011, the day before the domestic violence incident occurred. She witnessed the parties having a very loud argument. She noticed a bruise on Tanya's leg at that time. She stated that she had never seen Appellant hit Tanya. She testified that Tanya phoned her on the night of October 2, 2011, and told her that Appellant hit her.

{¶11} The jury convicted Appellant of domestic violence. The sentencing hearing took place on October 18, 2012. Tanya spoke at the sentencing hearing. She discussed prior instances of abuse and assault by Appellant going back to 2007. Appellant's counsel objected. The court responded by stating: "Well, it's going to the Court, so the Court will overrule the objection." (10/18/12 Tr., p. 4.) At the conclusion of her statement, Tanya asked the court to impose the maximum sentence. (10/18/12 Tr., p. 11.) Appellant's counsel did not ask for a continuance to respond to the allegations regarding the alleged prior assaults.

{¶12} The court sentenced Appellant to 180 days in jail, 150 days suspended, one year of community control to the probation department, anger management treatment, a $500 fine, and ordered him to have no contact with Tanya. The sentencing judgment entry was filed on October 18, 2012, and this timely appeal followed. Appellant presents two assignments of error on appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Appellant argues that the conviction is against the manifest weight of the evidence, primarily focusing on the issue of whether he caused any physical harm to the victim. Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.*

{¶14} In conducting its review, the appellate court proceeds under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not for the court of appeals to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, a reviewing court defers to the fact-finder, who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶15} R.C. 2919.25(A) requires proof of physical harm as part of the definition of domestic violence. Appellant believes there was conflicting evidence regarding whether he physically harmed Tanya. He claims that he did not choke the victim, hit her multiple times, or slam a chair into her stomach.

{¶16} Appellant himself admitted that they were fighting and yelling at each other for a long period of time the day of the assault, and that he "bumped" into her, causing her to fall into the couch. Whether or not criminal intent could be inferred from the circumstances surrounding this was for the trier-of-fact to decide. Appellant also agreed with Tanya as to almost all of the surrounding circumstances of the assault. There was evidence introduced as to red marks on Tanya's neck when the police arrived. There was conflicting evidence about the bruise on Tanya's leg, but the jury may have believed Tanya's evidence instead of the testimony of Appellant and Alana Bauer. Appellant's anger is apparent in reading the transcript. He argued with Tanya for not making dinner when she had asked him earlier whether he wanted to eat and he said no and went back to sleep. She asked for a cigarette, and instead of giving her one told her to take the car and get her own, but if she did, he would report the car was stolen. He picked up baby toys and threw them on the floor. When asked if he denied every instance of physically assaulting Tanya, he stated: "I don't deny every instance." (5/10/12 Tr., p. 110.)

{¶17} A domestic violence conviction can be sustained on the basis of a single witness and without any physical evidence of visible injuries. *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997). In the instant case,

there are multiple witnesses who testified to the basic parameters of the assault. There were two witnesses (including Appellant) who testified that Appellant pushed Tanya into their couch and two witnesses who testified that Tanya had red marks on her neck when the police arrived. Appellant's own testimony revealed there had been many angry and violent arguments with Tanya. Tanya's testimony alone would have been enough to sustain the conviction. The transcript reflects much more evidence was admitted at trial to confirm her testimony. The weight of the evidence supports the conviction, and Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN ALLOWING A VICTIM IMPACT STATEMENT WHICH INCLUDED NEW MATERIAL FACTS, FOCUSED ON ALLEGED EVENTS NOT DIRECTLY RELATED TO THE CIRCUMSTANCES OF THE CRIME, AND RECOMMENDED A MAXIMUM SENTENCE.

**{¶18}** Appellant challenges a number of aspects of the victim-impact statement in this case and asks that he be resentenced. A victim is permitted to make a statement at sentencing under R.C. 2930.13 and 2930.14. Appellant argues that a victim-impact statement may not contain new evidence, and if it does, the court should grant a continuance so that the defendant can adequately respond to the new evidence. Appellant contends that the victim's discussion about a wide range of prior assaults he had allegedly committed against her constituted new evidence that should have resulted in a continuance of the sentencing hearing.

{¶19} Appellant cites *State v. Sturgeon*, 138 Ohio App.3d 882, 742 N.E.2d 730 (1st Dist.2000), which briefly mentions that, under 2930.14(B), a defendant should be given an opportunity to respond if new material evidence is introduced as part of a victim's statement at sentencing.

{¶20} R.C. 2930.14(B) states:

(B) The court shall consider a victim's statement made under division (A) of this section along with other factors that the court is required to consider in imposing sentence or in determining the order of disposition. If the statement includes new material facts, the court shall not rely on the new material facts unless it continues the sentencing or dispositional proceeding or takes other appropriate action to allow the defendant or alleged juvenile offender an adequate opportunity to respond to the new material facts.

{¶21} Appellant's argument is not persuasive for a variety of reasons. First, the testimony that Appellant had previously assaulted Tanya was not new evidence, because it was discussed at trial at length and without objection. (5/10/12 Tr., pp. 31-32, 69.) In fact, it was Appellant's counsel who first raised the issue of the prior abuse when cross-examining Tanya. (5/10/12 Tr., p. 31.) Second, after a defendant has been made aware that there is some new information the court "use[d] in imposing sentence upon a defendant, and the defendant does not seek a continuance to rebut that information, then such information will *not* be found to constitute 'new material facts' that trigger the continuance requirement in R.C.

2930.14(B)." (Emphasis sic.) *State v. Marple*, 12th Dist. No. CA2004-09-073, 2005-Ohio-6272, ¶38, citing *State v. Brown*, 146 Ohio App.3d 654, 660, 2001-Ohio-4266, 767 N.E.2d 1192 (1st Dist.). Even if we could view Tanya's statement as containing new evidence, instead of asking for a continuance, Appellant's counsel decided to directly challenge the information in the victim-impact statement as being irrelevant. (10/18/12 Tr., p. 12.) Counsel therefore waived any potential error under R.C. 2930.14(B). *State v. Harris*, 2d Dist. No. 20841, 2005-Ohio-6835, ¶7.

**{¶22}** We have also held that: "It is well-established that sentencing courts can consider arrests and even prior allegations that did not result in conviction." *State v. Mayor*, 7th Dist. No. 07 MA 177, 2008-Ohio-7011, ¶16; *see also, State v. Cooey*, 46 Ohio St.3d 20, 544 N.E.2d 895 (1989) (at sentencing, a court may consider mere allegations of crimes for which the defendant is never prosecuted).

**{¶23}** Finally, Appellant cannot show there was any prejudice from the victim-impact statement because the statement was presented to the judge rather than the jury, and "judges are presumed to know the law and expected to consider only relevant, material, and competent evidence during their deliberations." *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶57. The trial judge pointed this out to defense counsel when he overruled the objection concerning the discussion of prior assaults in the victim-impact statement.

**{¶24}** Appellant next contends that the court erred by allowing the victim to give a sentencing recommendation. Tanya recommended Appellant be given the

maximum sentence. R.C. 2930.13(C)(4) specifically allows the victim to make a sentencing recommendation:

> (C) A statement made by the victim under division (A) or (B) of this section may include the following:
>
> * * *
>
> (4) The victim's recommendation for an appropriate sanction or disposition for the defendant or alleged juvenile offender regarding that crime or specified delinquent act.

**{¶25}** Appellant cites a number of capital murder cases for the proposition that a victim cannot recommend a sentence as part of a victim-impact statement. Many years ago, special due process considerations specific to capital cases originally prohibited relatives of the victim from making any statements at all at sentencing, but this changed in Ohio in 1992 in *State v. Evans*, 63 Ohio St.3d 231, 586 N.E.2d 1042 (1992), when the Ohio Supreme Court recognized that victim-impact statements were admissible even in capital cases. See also, *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed. 720 (1991). We note that the sentencing phase of some capital murder cases is presented to the jury, which raises different concerns than most other sentencing issues that are presented only to the trial judge rather than a jury. R.C. 2929.03(D). As already stated, a judge is presumed to know and follow the law regarding sentencing, and any errors in a victim making a sentencing recommendation can be ignored by the judge. *Thomas, supra,*

97 Ohio St.3d 309, ¶57. Appellant cites no non-capital cases regarding the permissible content of a victim's statement at sentencing.

{¶26} Appellant also objects to the emotional tone of the victim-impact statement. Once again, Appellant cites to a capital murder case, *State v. Lang,* 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶237, which warns against a victim-impact statement from becoming "overly emotional." Again, this concern arose in capital cases because sentencing is primarily a function of the jury in those cases, who might be overly swayed by emotional appeals. Most felony sentencing hearings are argued only to the trial judge, who can fairly apply the law even after hearing emotional statements from those affected by the crime. Appellant has not cited to any non-capital case in which the emotional tone of the victim's statement at sentencing had any bearing on the validity of the sentence. Even if it were a concern in non-capital cases, there is nothing about the victim's statement in this case that can be labeled as overly emotional. In fact, when the victim began to get emotional in recounting the long history of Appellant's abuse, she allowed someone else to finish reading her statement for her. (10/18/12 Tr., p. 6.)

{¶27} None of Appellant's arguments regarding the victim-impact statement at sentencing have any merit, and his second assignment of error is overruled.

## Conclusion

{¶28} Appellant first challenges his conviction as being against the manifest weight of the evidence. The victim testified extensively about her physical injuries inflicted by Appellant on the night of the crime, and officer Habeger testified about red

marks on the victim's neck and chest and a bruise on her thigh, which were consistent with the victim's allegations. Appellant himself testified that he "bumped into" the victim, causing her to fall into the couch. Appellant admitted that he had many violent arguments with Tanya, and it would not have been difficult for the jury to believe that his anger erupted into physical violence. The manifest weight of the evidence supports the conviction. Appellant also argues that the victim improperly added new evidence at sentencing in addressing prior assaults, made an improper recommendation about the length of the sentence, and was overly emotional at sentencing. There was no error in allowing the victim to talk about prior assaults when it was Appellant himself who raised the issue of the prior assaults at trial. Even if this were not the case, there was no prejudice in the discussion about prior assaults, as the trial judge was able to ignore any inappropriate comments. In addition, Appellant failed to ask for a continuance to rebut the victim impact statement, and thus waived any alleged errors. Regarding the victim's recommendation that the maximum sentence be imposed, a victim is permitted by statute to give an opinion about the length of the sentence. Finally, there is no indication that the victim's statement was overly emotional, and any error in the tone of the victim's statement could be ignored by the trial judge. Neither of Appellant's assignments of error have merit, and the conviction and sentence are affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.